# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| The Bank of New York Mellon as Trustee for the Certificateholders of CWALT, Inc., Alternative Loan Trust 2005-7CB, Mortgage Pass-through certificates, Series 2005-7CB,<br><br>    Plaintiff<br><br>v.<br><br>Shadow Crossing Homeowners Association; SFR Investments Pool 1, LLC; and Nevada Association Services, Inc.,<br><br>    Defendants | Case No. 2:16-cv-01081-JAD-EJY<br><br>**Order Denying Motion to Amend and Granting Summary Judgment on Quiet Title Claim**<br><br>[ECF Nos. 55, 62] |

    The Bank of New York Mellon brings this action to challenge the effect of the 2012 non-judicial foreclosure sale of a home on which it claims a deed of trust.[1] The bank sues the Shadow Crossings Homeowners Association, its foreclosure agent Nevada Association Services, Inc., and foreclosure-sale purchaser SFR Investments Pool 1, LLC, primarily seeking a declaration either that the sale was invalid or that SFR purchased the property subject to the bank's security interest.

    The bank moves to amend its complaint to name the foreclosed-upon homeowner as a nominal defendant and to add a declaratory relief claim seeking an order confirming the bank's ability to foreclose under its deed of trust. Because the bank has not shown good cause for that amendment or excusable neglect for the delay in seeking it, I deny the motion to amend. The bank also moves for summary judgment on its quiet-title claim and has demonstrated that its

---

[1] ECF No. 1.

predecessor-in-interest validly tendered the superpriority portion of the HOA lien, saving the deed of trust from extinguishment. So I grant summary judgment in favor of the bank on its quiet-title claim based on the tender theory, dismiss all other claims and theories rendered moot by this ruling, and order the parties to a mandatory settlement conference with the magistrate judge to attempt to resolve the remaining deceptive-trade-practice claim.[2]

**Factual and Procedural Background**

Rand Penrod purchased the home at 6552 Raven Hall Street in North Las Vegas, Nevada in 2004 with a loan from Lending Tree, secured by a deed of trust that designated Mortgage Electronic Registration Systems, Inc. (MERS) as the beneficiary.[3] MERS assigned that deed of trust "together with the note" to the Bank of New York Mellon in September 2011.[4] The home is located in the Rome planned-unit development and subject to the declaration of covenants, conditions, and restrictions (CC&Rs) for the Shadow Crossings Homeowners Association (the HOA).[5]

The Nevada Legislature gave homeowners' associations a superpriorty lien against residential property for certain delinquent assessments and established in Chapter 116 of the Nevada Revised Statutes a non-judicial foreclosure procedure to enforce such a lien.[6] When the

---

[2] Discovery has closed. *See* ECF No. 38 (amended scheduling order with 7/23/19 discovery cut-off). I find both of the bank's motions suitable for disposition without oral argument. L.R. 78-1.

[3] ECF No. 62-1 (deed of trust).

[4] ECF No. 62-2 (assignment).

[5] ECF Nos. 62-1 (planned-unit development rider); 62-3 (recorded HOA governing documents).

[6] Nev. Rev. Stat. § 116.3116; *SFR Investments Pool 1 v. U.S. Bank* ("*SFR I*"), 334 P.3d 408, 409 (Nev. 2014).

assessments on this home purportedly became delinquent, the HOA commenced non-judicial foreclosure proceedings on it under Chapter 116 in July 2009.[7]

**A.     The HOA rejected the bank's tender and foreclosed on the property.**

When MERS learned of the impending foreclosure in 2010, its counsel, the law firm of Miles, Bauer, Bergstrom & Winters, LLP, sent a letter to the HOA dated June 22, 2010, asking for "the breakdown of the HOA arrears" and explaining Miles Bauer's position that nine months' of common assessments pre-dating the March 26, 2010, notice of delinquent assessment should be the sum required "to fully discharge" the bank's obligations to the HOA.[8] Miles Bauer's records contain an account statement for the property, which reflects "Dates of Delinquency" from "02/09-08/10" and a "Monthly Assessment Amount" of $69.[9] The total statement balance, including unpaid assessments, late fees, interest, and substantial collection fees, was $1,894.59.[10]

Miles Bauer's records contain a second letter dated August 20, 2010, that states, "We have received correspondence from your firm regarding our inquiry into the 'Super Priority Demand Payoff' for [this] property. The Statement of Account provided by in regards to [sic] the above-referenced address shows a full payoff amount of $1,894.59. BAC [Home Loans Servicing, LP] is the beneficiary/servicer of the first deed of trust loan secured by the property and wishes to satisfy its obligations to the HOA."[11] The letter further explains that it was

---

[7] ECF No. 62-4 (notice of lien for delinquent assessments); ECF No. 62-5 (notice of default and election to sell under homeowners' association lien); ECF No. 62-7 (notice of foreclosure sale); and ECF No. 62-12 (foreclosure deed).

[8] ECF No. 62-8 at 6–7.

[9] *Id*. at 9–10. That statement does not reflect any charges for maintenance or nuisance abatement.

[10] *Id*. at 10.

[11] *Id*. at 12.

3

accompanying a check for $621.00, which represents the maximum 9 months worth of delinquent assessments recoverable by an HOA. This is a non-negotiable amount and any endorsement of said cashier's check on your part, whether express or implied, will be strictly construed as an unconditional acceptance on your part of the facts stated herein and express agreement that BAC's financial obligations towards the HOA in regards to the real property located at 6552 Raven Hall St. have now been 'paid in full.'"[12] Miles Bauer's records reflect that the check[13] was rejected.[14] The HOA foreclosed on the property on September 14, 2012. SFR was the winning bidder at $6,025.[15] As the Nevada Supreme Court held in *SFR Investments Pool 1 v. U.S. Bank* in 2014, because NRS 116.3116(2) gives an HOA "a true superpriority lien, proper foreclosure of" that lien under the non-judicial foreclosure process created by NRS Chapters 107 and 116 "will extinguish a first deed of trust."[16]

**B.     The bank's claims**

The bank brings this action to save its deed of trust from extinguishment, pleading claims for quiet title, breach of NRS 116.1113, wrongful foreclosure, injunctive relief, and deceptive trade practices.[17] The NRS 116.1113 and wrongful-foreclosure claims are contingent claims seeking damages only "[i]f it is determined" that the foreclosure sale extinguished the bank's

---

[12] *Id*. at 13.

[13] *Id*. at 14.

[14] *Id*. at 16.

[15] ECF No. 62-12.

[16] *SFR I*, 334 P.3d at 419.

[17] ECF No. 1. I construe the injunctive-relief claim in count four as a prayer for preliminary injunctive relief because injunctive relief is remedy, not an independent cause of action. This claim is asserted only against SFR. The resolution of the quiet-title claim in favor of the bank also moots the need for preliminary injunctive relief against SFR because it leaves no claims pending against SFR.

4

deed of trust.[18] The bank's quiet-title claim is the type recognized by the Nevada Supreme Court in *Shadow Wood Homeowners Association, Inc. v. New York Community Bancorp*—actions "seek[ing] to quiet title by invoking the court's inherent equitable jurisdiction to settle title disputes."[19] The resolution of such a claim is part of "[t]he long-standing and broad inherent power of a court to sit in equity and quiet title, including setting aside a foreclosure sale if the circumstances support" it.[20]

The bank now moves for summary judgment on that quiet-title claim and to amend its complaint. I consider each request in turn.

## Discussion

### A. The bank's motion to amend its complaint [ECF No. 55]

Three months after the cutoff for adding parties and amending the pleadings, the bank moved to amend its complaint to do two things: (1) name foreclosed-upon Penrod as a nominal defendant, and (2) add a claim seeking a declaration that the bank "May Foreclose Under the Deed of Trust."[21] The bank filed this request after I denied a motion to dismiss in which SFR argued, among other things, that dismissal was necessary because the bank failed to join Penrod.[22] Though the bank's opposition to SFR's dismissal motion contained an alternative request to amend its complaint, the two-sentence request was perfunctory and made after the deadline for seeking leave to amend, and SFR failed to attach a proposed amended complaint as

---

[18] *Id.* at ¶¶ 65, 73.

[19] *Shadow Wood Homeowners Ass'n, Inc. v. New York Cmty. Bancorp*, 366 P.3d 1105, 1110–1111 (Nev. 2016).

[20] *Id.* at 1112. I made this determination on the record during the hearing on SFR's motion to dismiss.

[21] ECF Nos. 55, 55-1 at 13.

[22] ECF No. 50 (minutes of hearing on ECF No. 43).

5

Local Rule 15-1 requires, so I denied it.[23] SFR "does not necessarily object to adding" Penrod as a defendant, but it "vehemently objects" to the new declaratory-relief claim as untimely, prejudicial, and bad faith.[24] Whether to grant leave to amend is a determination left to the discretion of the district court, which may deny the request if amendment would be futile or the request is the result of bad faith or undue delay or would prejudice the opposing party.[25]

The bank contends that it needs to name Penrod as a nominal defendant "[g]iven the potential that the Court may later dismiss for failure to join the former homeowner."[26] But that potential is not real. As I explained at the hearing, the only reason that Penrod could be a proper defendant would be if the sale were to be unwound:

> If the bank succeeds in securing that alternate relief and the Court declares the sale void, the result would be—could be to unwind the sale and put the parties back in their pre-foreclosure posture. Penrod would be the owner, the HOA would have a lien, and the bank would have a deed of trust. So Penrod may be a necessary party.

But as I hold below, an unwinding of the sale is not the remedy that I grant for the bank's quiet-title claim. Instead, I hold that the tender preserved the deed of trust, so SFR bought the property subject to that interest.[27] Because that holding eliminates the potential for an unwinding of the sale, adding Penrod as a defendant would be futile.

---

[23] *See* ECF No. 43 at 11 (filed 4/29/19); *see also* ECF No. 38 (amendment deadline of 4/24/19).
[24] ECF No. 59.
[25] *Carrico v. City & Cnty of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011); *Foman v. Davis*, 371 U.S. 178, 182 (1962).
[26] ECF No. 55 at 2.
[27] *See infra* at pp. 8–12.

The bank's request to "clarify that [it] seeks confirmation of its ability to foreclose on the deed of trust" fails for bad faith and undue delay. Adding such a prayer would not *clarify* the complaint—it would *add an entirely new remedy* because nothing in the original complaint indicates that the bank was seeking such a declaration. If seeking such a declaration was indeed one of the bank's goals, it would and should have known so when it filed this lawsuit in May 2016. The bank has not shown good cause (let alone excusable neglect) for taking more than three years to realize this omission. So I deny the bank's motion to file an amended complaint at this late stage.

**B.     The bank's motion for summary judgment [ECF No. 62]**

The bank also moves for summary judgment on its quiet-title claim. It offers six reasons why I must hold that the HOA foreclosure sale did not extinguish its deed of trust: (1) the Miles Bauer tender satisfied the superpriority portion of the lien, so under the Nevada Supreme Court's ruling in *Bank of America v. SFR Investments Pool 1, LLC* (known as the *Diamond Spur* case),[28] SFR took the property subject to the deed of trust; (2) Penrod satisfied the superpriority portion of the lien with his own payments; (3) the sale is void because it violated the automatic stay imposed by Penrod's bankruptcy; (4) the sale must be set aside because the price was grossly inadequate and the sale was unfair and oppressive; (5) Nevada's HOA foreclosure scheme was facially unconstitutional; and (6) the sale violated the bank's due-process rights as applied.[29] SFR opposes the motion.[30] Because I find that the bank is entitled to summary judgment on its quiet-title claim based on the tender theory, I do not reach the remaining arguments.

---

[28] *Bank of Amer. v. SFR Invs. Pool 1, LLC* ("*Diamond Spur*"), 427 P.3d 113 (Nev. 2018).
[29] ECF No. 62.
[30] ECF No. 63.

7

### *1. Summary-judgment standards*

Summary judgment is appropriate when the pleadings and admissible evidence "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[31] When the plaintiff moves for summary judgment on one of its claims, "it must come forward with evidence [that] would entitle it to a directed verdict if the evidence went uncontroverted at trial."[32] The burden then shifts to the defendant to "set forth specific facts showing that there is a genuine issue for trial."[33] Although the court must view all facts and draw all inferences in the light most favorable to the nonmoving party, "a scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact."[34]

### *2. The tender of the full superpriority amount saved the deed of trust from extinguishment.*

The bank contends that its predecessor's tender of $621, which consists of nine months' worth of HOA assessments on this property, makes this case procedurally identical to *Bank of America v. SFR Investments Pool 1, LLC* ("*Diamond Spur*"), in which the Nevada Supreme Court, sitting en banc, held that a nearly identical "tender cured the default as to the superpriority portion of the HOA's lien, [so] the HOA's foreclosure on the entire lien resulted in a void sale as to the superpriority portion[,] . . . [and the foreclosure-buyer] purchased the property subject to

---

[31] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)).

[32] *C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992) (citation and quotations omitted)).

[33] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[34] *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

8

[the] deed of trust."[35] The *Diamond Spur* Court explained that "[a] valid tender of payment operates to discharge a lien or cure a default."[36] Although a valid tender requires payment in full, for purposes of satisfying an HOA's superpriority lien and thus saving a deed of trust from extinguishment under the version of the foreclosure statute then in effect, the bank needed to pay only "charges for maintenance and nuisance abatement, and nine months of unpaid assessments."[37] Because the bank paid nine months' worth of assessments based on the HOA's information "and the HOA did not indicate that the property had any charges for maintenance or nuisance abatement," the *Diamond Spur* Court found that, "[o]n the record presented, this was the full superpriority amount."[38]

  *Diamond Spur* is dispositive of this case and compels summary judgment in favor of the bank.[39] The record shows without genuine controversy that Miles Bauer validly tendered the full amount of the superpriority lien to the HOA. The only charges that could comprise the superpriority portion of the HOA's lien were "charges for maintenance and nuisance abatement, and nine months of unpaid assessments."[40] The HOA's ledger reflects no charges for

---

[35] *Bank of Amer. v. SFR Investments Pool 1, LLC (Diamond Spur)*, 427 P.3d 113, 121 (Nev. 2018).

[36] *Diamond Spur*, 427 P.3d at 117.

[37] *Id*. (citing 116.3116(2) and *SFR*, 334 P.3d at 412).

[38] *Id.* at 118.

[39] This conclusion is further supported by the Ninth Circuit's decision in *Bank of America v. Arlington W. Twilight Homeowners Ass'n*, 920 F.3d 620 (2019), in which the panel applied *Diamond Spur* to validate a materially identical tender. *See id.* at 623 ("the bank's tender plainly satisfied the superpriority portion of Arlington West's lien. Based on the ledger provided by Arlington West, the bank tendered what it calculated to be nine months of HOA dues ($423), and Arlington West does not dispute that this amount was correctly calculated. The ledger did not indicate that the property had incurred any charges for maintenance or nuisance abatement, which are the only other fees that could have been included in the superpriority amount. The tender thus was sufficient.").

[40] *Diamond Spur*, 427 P.3d at 117 (citing 116.3116(2) and *SFR I*, 334 P.3d at 412).

9

maintenance or nuisance abatement.[41] And the accounting it provided just before the tender indicated that the assessments were $69 per month.[42] 9 x $69 = $621, which is the sum that Miles Bauer tendered to the HOA.[43] On this record, Miles Bauer's $621 tender satisfied the full superpriority portion of the lien. So, as the Nevada Supreme Court held in *Diamond Spur*, the foreclosure sale on the entire lien resulted in a void sale as to the superpriority portion. The "first deed of trust [thus] remained after foreclosure," and "the HOA could not convey full title to the property."[44]

### 3. *The tender was not impermissibly conditional.*

SFR argues that the Miles Bauer tender was impermissibly conditional and "incorrectly defined the superpriority amount."[45] The letter sent with the check stated that the $621 payment was "a non-negotiable amount and any endorsement . . . will be strictly construed as an unconditional acceptance on your part of the facts stated herein and express agreement that [the first-deed-of-trust holder's] financial obligations towards the HOA in regards to" the property "have now been 'paid in full.'"[46] SFR argues that it was improper for Miles Bauer to so insist because the $621 "exclude[ed] any other amounts that could compose the superpriority portion of the lien" like "charges related to maintenance and nuisance/abatement."[47]

---

[41] ECF No. 62-8 at 9.
[42] *Id.*
[43] *Id*. at 12–14.
[44] *Diamond Spur*, 427 P.3d at 121.
[45] ECF No. 63 at 24–25.
[46] ECF No. 62-8 at 13.
[47] ECF No. 63 at 25.

10

But the record does not reflect—and SFR does not demonstrate—that there were any maintenance or nuisance-abatement charges assessed against this property. So, as the *Diamond Spur* Court expressly held when considering verbatim language in the Miles Bauer tender letter in that case, the bank "had a legal right to insist on" the condition because "acceptance of the tender would satisfy the superpriority portion of the lien, preserving" the bank's interest in the property.[48] Because the Nevada Supreme Court has found that the Miles Bauer form letter used in this case does not invalidate an otherwise proper tender of the superpriority portion of an HOA lien, SFR's arguments that this language was impermissible fail.

### *4. The record establishes the bank's entitlement to summary judgment.*

Finally, SFR argues that the bank's evidence of tender is insufficient to eliminate a genuine issue of fact.[49] But the Miles Bauer evidence, which this court has now seen in dozens of these HOA-foreclosure cases, and which is being replicated across hundreds of cases in Nevada's state and federal courts, sufficiently establishes that tender was made and rejected. Douglas E. Miles's affidavit is heavily detailed, relates specifically to this property, and established that Mr. Miles is qualified to lay a foundation for the admissibility of the tender documents under the business-records exception to the hearsay rule.[50] Even if I agree with SFR that the NAS ledger within those documents contains inadmissible hearsay, I don't need that ledger to confirm that nine months' worth of assessments on this property amounted to $621 because the HOA's person most knowledgeable testified at deposition that the monthly

---

[48] *Diamond Spur*, 427 P.3d at 118.
[49] ECF No. 63 at 25–27.
[50] ECF No. 62-8.

11

assessment was in fact $69.[51] And SFR offers nothing but speculation to suggest that there could have been charges for maintenance or nuisance abatement.[52]

To the extent that SFR is suggesting that evidence on summary judgment must be admissible, it ignores the 2010 amendment to Federal Rule of Civil Procedure 56, which "eliminate[d] the unequivocal requirement" that evidence must be admissible in its present *form* in order to be considered at summary judgment.[53] Instead, the rule now mandates only that the *substance* of the proffered evidence be admissible at trial.[54] So the proper focus is not on whether the NAS documents contain hearsay, but whether the information that they contain can be presented in an admissible form at trial. Given that the depositions of the persons most knowledgeable for both the HOA[55] and NAS[56] were taken in this case, either witness would likely be able to testify truthfully about the information contained in the NAS statements for this property. Because that information establishes that the superpriority portion of this lien consisted only of the $621 in monthly assessments, and there is no colorable evidence to the contrary, the bank is entitled to summary judgment on its quiet-title claim based on tender.

---

[51] ECF No. 62-9 at 6 (White depo. transcript at 12:14).

[52] *See O.S.C. Corp. v. Apple Computer, Inc.*, 792 F.2d 1464, 1467 (9th Cir. 1986) (quoting *Barnes v. Arden Mayfair, Inc.*, 759 F.2d 676, 681 (9th Cir. 1985)) (the summary-judgment burden requires "more than mere speculation, conjecture, or fantasy.").

[53] *Romero v. Nev. Dep't of Corr.*, 673 F. App'x 641, 644 (9th Cir. 2016) (unpublished).

[54] *Id.*; *see also* Fed. R. Civ. P. 56 advisory comm. note to 2010 amendment; *see also Sweet People Apparel, Inc. v. Phoenix Fibers, Inc.*, 748 F. App'x 123 (9th Cir. 2019) (Dorsey, J., dissenting) (collecting cases).

[55] ECF No. 62-9 (depo. of Raynie White).

[56] ECF No. 62-10 (depo. of Susan Moses).

**C.   The bank's remaining quiet-title theories and contingent claims are dismissed.**

The resolution of the quiet-title claim in the bank's favor based on this tender theory moots its other quiet-title theories. So I dismiss those remaining theories as moot. And because I find that the tender preserved the bank's deed of trust such that it was not extinguished by the foreclosure sale, the bank's alternative claims against the HOA and NAS for breach of NRS 116.1113 and wrongful foreclosure are also moot. Both are conditioned on the failure of the bank's quiet-title claim as they state, "[i]f it is determined Shadow Crossing's foreclosure sale extinguished the senior deed of trust . . . [these] actions will cause [the bank] to suffer general and special damages . . . ."[57] Because that condition will not materialize, I sua sponte dismiss the bank's second and third causes of action.

**Conclusion**

The net effect of this order is that the bank is entitled to summary judgment in its favor on its quiet-title claim based on a tender theory, its remaining quiet-title theories are dismissed as moot, as are its claims for breach of NRS 116.1113 and wrongful foreclosure.[58] This leaves in play only the bank's fifth cause of action for deceptive trade practices against the HOA and NAS.[59] So, I refer this case to the magistrate judge for a mandatory settlement conference.

IT IS THEREFORE ORDERED that the Bank of New York Mellon's Motion to Amend Complaint **[ECF No. 55] is DENIED**;

---

[57] *Id*. at ¶¶ 65, 73.

[58] Though this grant of partial summary judgment eliminates most claims and all claims against SFR, I decline to direct the entry of final judgment under Rule 54(b) as to the resolved matters at this time.

[59] ECF No. 1 at 15.

IT IS FURTHER ORDERED that the Bank of New York Mellon's Summary Judgment Motion **[ECF No. 62] is GRANTED in part** as set forth herein;

IT IS FURTHER ORDERED that **this case is referred to the magistrate judge for a mandatory settlement conference.** The remaining parties' obligation to file their proposed joint pretrial order is tolled until ten days after the settlement conference.

Dated: March 27, 2020

_____
U.S. District Judge Jennifer A. Dorsey